UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>ANGEL COLON,<br>    Defendant. | :<br>:<br>:<br>:   No. 2:06-cr-121<br>:<br>:<br>:<br>: |

**OPINION AND ORDER**

On May 21, 2007, Defendant Angel Colon pled guilty to one count of conspiracy to distribute narcotics.  The Presentence Report calculated Colon's total offense level at thirty-one.  *See* United States Sentencing Guidelines Manual § 2D1.1 (2006).  Beginning with a base offense level of twenty-six, Colon received a two-level enhancement for his leadership role in the conspiracy pursuant to USSG § 3B.1.1(c), plus an additional six-level enhancement pursuant to the career offender provision set out in USSG § 4B1.1.  He also received a three-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1.  Although Colon had a total of seven criminal history points, ordinarily resulting in a designation of criminal history category IV, he was elevated to the highest level, criminal history category VI, based again on the application of the career offender provision, USSG § 4B1.1.

The Court held a sentencing hearing on August 27, 2007. Colon moved for a downward departure pursuant to USSG § 4A1.3(b). The hearing was continued to allow the parties to provide further legal briefing, and a second sentencing hearing was held on October 25, 2007. After considering the particular circumstances of this case, the Court granted Colon's motion for a downward departure, finding that Colon's criminal history category substantially over-represented the seriousness of his criminal history as well as his likelihood of recidivism. The Court granted a one-level horizontal departure, to category V, and a vertical departure to an offense level of twenty-five, resulting in a Guidelines range of 100-125 months. The Court imposed a sentence of 100 months, adjusted to 64 months pursuant to USSG § 5G1.3(b). The Court writes here to clarify the reasoning supporting its conclusion.

## I.   Criminal History Background

Colon was born in 1976, the only child of Felix Colon and Ana Matos. His father died when he was very young and his mother married Saul Quesada. Both his mother and stepfather were addicted to heroin. His stepfather died of AIDS in 1993; his mother in 2000. As documented in the Presentence Report, Colon has been arrested on numerous occasions, but the large majority of arrests have involved automobile offenses, such as driving without a license, and traffic violations. In computing criminal

history, such offenses are specifically excluded under USSG § 4A1.2(c). Colon's record reveals only two prosecutions relevant to determining whether he is a career offender under the Guidelines.

First, Colon was charged in 1996 with assault and battery, a misdemeanor under Massachusetts state law punishable by a sentence of up to two and one half years in a House of Correction. The Massachusetts assault and battery statute reaches two separate crimes, harmful touching and offensive touching. *Commonwealth v. Burke*, 457 N.E.2d 622, 624 (Mass. 1983). In either case, the standard charging language used in state court criminal complaints is identical, namely that the defendant "did assault and beat" the victim. Indeed, the criminal complaint in Colon's case uses these exact words.

Before describing the disposition of this case, some background information is helpful. Massachusetts allows for a number of summary disposition procedures to allow the criminal justice system to operate with greater efficiency. *See United States v. Hines*, 802 F. Supp. 559 (D. Mass. 1992) (providing overview of procedures). One such procedure allows for the state district courts to issue a "continuance without a finding" ("CWOF"), continuing the case for a lengthy period of time at the end of which the case is dismissed. *Id.* at 562. A second procedure allows defendants to "test [their] cases" by entering

an admission of sufficient facts.  *Id*.  In 1994, Massachusetts abolished its former "two-tier" system and mandated uniform procedural rules in the state district courts.  *See United States v. Morillo*, 178 F.3d 18, 21-22 (1st Cir. 1999) (citing Mass. Gen. Laws Ann. ch. 278, § 18 (1998)).  Since that time, an admission of sufficient facts can only be accomplished if the court has observed all the procedural formalities of Rule 12 of the Massachusetts Rules of Criminal Procedure.  *Id*.  The record indicates that Colon admitted sufficient facts and the district court entered a CWOF on October 1, 1996, eventually dismissing the charge on October 7, 1997.

Second, in 1999 Colon was charged with assault and battery with a dangerous weapon as well as assault and battery.  Both offenses are classified as misdemeanors under Massachusetts law, punishable by a sentence of up to two and one half years in a House of Correction.  Assault and battery with a dangerous weapon necessarily entails a harmful touching.  *See Commonwealth v. Appleby*, 402 N.E.2d 1051, 1059-61 (Mass. 1980).  In cases where the defendant has allegedly kicked the victim, assault and battery with a dangerous weapon is generally charged, the dangerous weapon being "a shod foot."  The record confirms that the dangerous weapon in this case was Colon's foot.  Colon pled guilty to both counts and was sentenced to two years of probation and five months in a House of Correction (time served)

respectively. Based on a violation of probation he was subsequently sentenced to six months in a House of Correction.

Prior to the conduct involved in the instant offense, Colon had not been convicted of a felony.[1] He has pled guilty to misdemeanors in the Massachusetts District Courts and has served sentences of between three and six months in the Hampden County House of Correction. Colon has never served any time in any Massachusetts state correctional facilities.

## II. Discussion

*A. Applicability of Career Offender*

The Government has argued that both of the offenses described above qualify as predicate offenses triggering the career offender designation in USSG § 4B1.1. Section 4B1.1(a) states: "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of

---

[1] As noted above, Massachusetts designated both offenses as misdemeanors. Massachusetts maintains two distinct sets of facilities, houses of correction and state correctional facilities; the latter are reserved for those who are convicted of felonies. Imprisonment in state correctional facilities was not authorized for either of Colon's offenses. However, under the Guidelines, the determining factor is not how the jurisdiction designates the offense, but rather the maximum penalty authorized by statute. USSG 4B1.2 cmt. n.1. Because a maximum term of two and a half years is authorized, both of the offenses are treated as felonies for the purposes of the career offender provision.

violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1.

There is no dispute that the first two requirements have been met in Colon's case. With regard to the third requirement, however, the characterization of the 1996 charge as a predicate offense raises three significant legal questions: (1) whether the 1996 CWOF qualifies as a conviction; (2) whether the CWOF may be counted even after it has been subsequently dismissed; and (3) whether boilerplate charging language is sufficient to establish that the assault and battery in this case constituted a "crime of violence" as defined in the Guidelines. As will be seen, there is a split of authority between the circuits with respect to each of these questions. Moreover, the Second Circuit has not had occasion to address the specific issues involved. The Court, having granted a downward departure pursuant to USSG § 4A1.3(b), does not reach these issues in the present case. Nonetheless, I write about these issues for the sake of clarity and completeness.

    1.    *Whether a CWOF Constitutes a Conviction Under the "Diversionary Dispositions" Provision*

The Guidelines provide definitions and instructions for determining what constitutes a conviction in USSG § 4A1.2. *See* USSG § 4B1.2 cmt. n.3. Not surprisingly, the particular

Massachusetts procedures at issue in this case have been addressed most frequently by the First Circuit.  In these cases, the First Circuit has looked to two distinct provisions within USSG § 4A1.2, the first treating "diversionary dispositions," the second "expunged convictions."  USSG § 4A1.2(f), (j).  Although the First Circuit's decisions with regard to both provisions are consistent, other circuits, in analyzing the same provisions, have reached divergent, and in some cases antipodal, conclusions.

The First Circuit initially addressed the "diversionary disposition" issue in *United States v. Roberts*, 39 F.3d 10 (1st Cir. 1994).  Roberts challenged the addition of a criminal history point based on a prior CWOF received in Massachusetts state court.  Roberts, like Colon, had entered an admission of sufficient facts.  The court based its analysis on USSG § 4A1.1(f) which states that "[d]iversion from the judicial process without a finding of guilt (e.g. deferred prosecution) is not counted."  Note 9 adds: "[A]dult diversionary dispostions [are counted] if they involved a judicial determination of guilt or an admission of guilt in open court."  USSG § 4A1.2(f) cmt. n.9.

The First Circuit acknowledged a degree of ambiguity as to whether an admission of sufficient facts should constitute an "admission of guilt."  *Roberts*, 39 F.3d at 12.  The circuit found that a fact-specific inquiry was necessary.  The lynchpin issue was whether there were sufficient procedural safeguards to insure

that the trial judge had "probe[d] the defendant's understanding" and "satisf[ied] himself that there [was] a factual basis for a finding of guilty."  *Id* at 12-13 (quoting *Commonwealth v. Duquette,* 438 N.E.2d 334, 342 (Mass. 1982)).  The court thus held that an admission of sufficient facts could constitute an admission of guilt under the Guidelines, but that the government bears the burden of showing "that what happened ... was *in substance* an admission of guilt."  *Id.* at 13.

Following the overhaul of the two-tier system in 1994 and the adoption of uniform procedural rules in state criminal prosecutions, the First Circuit returned to this issue in *United States v. Morillo*, 178 F.3d 18 (1st Cir. 1999).  The court noted that a Massachusetts district court could no longer enter a CWOF without first "conduct[ing] a hearing and satisfy[ing itself] that there is a factual basis for the charge."  *Id*. at 20-21; Mass. R. Crim. P. 12(c)(5)(a).  The court held that so long as the state court had observed the Rule 12 procedures, a post-1994 CWOF qualified as a diversionary disposition resulting from an "admission of guilt," and thus counted towards the defendant's criminal history.

In contrast, the Seventh Circuit reached the opposite conclusion in addressing a nearly identical legal question concerning a diversionary procedure used in Illinois that mirrors the Massachusetts CWOF procedure.  See *United States v. Kozinski*,

8

16 F.3d 795 (7th Cir. 1994). The defendant in this case had received an "order of supervision" based on a stipulation to "facts supporting the charge or a finding of guilt." *Id.* at 812. This type of stipulation in Illinois is substantially identical to an admission of sufficient facts in the Massachusetts system. *See Roberts*, 39 F.3d at 12 (treating the two procedures as identical). The Seventh Circuit held that such a stipulation "does not in any way equate with an admission of guilt." *Kozinski*, 16 F.3d at 812. Because the record did not indicate that the defendant had pled guilty nor that the court had entered a finding of guilt, the court concluded that it was error to consider the offense for purposes of calculating criminal history under USSG § 4A1.2(f).

The Second Circuit has not had occasion to address this specific issue.

   *2.   Whether Dismissal of the CWOF Precludes Counting It as
         a Conviction Under the "Expunged Convictions" Provision*

Section 4A1.2(j) states that "expunged convictions are not counted;" Note 10, however, provides that convictions that are "set aside... for reasons unrelated to innocence or errors of law... are to be counted." USSG § 4A1.2(j), cmt. n.10. In interpreting this language, the circuit courts have developed several distinct approaches to determining whether a sentence has been expunged and thus should not be counted towards a

9

defendant's criminal history.  A number of circuits have held that a conviction is expunged for purposes of § 4A1.2(j) only if the expungement was due to innocence or errors of law.  *See United States v. Hines*, 133 F.3d 1360 (10th Cir. 1998); *United States v. Ashburn*, 20 F.3d 1336 (5th Cir. 1994); *United States v. McDonald*, 991 F.2d 866 (D.C. Cir. 1993).

The Second and Ninth Circuits, however, have adopted somewhat different approaches in determining what constitutes an expunged conviction.  In *United States v. Beaulieau*, 959 F.2d 375 (2d Cir. 1992), the Second Circuit considered whether a prior conviction that had been sealed pursuant to a juvenile offender statute in Vermont was countable.  The court looked specifically to the underlying state statutory language and found that "the process of sealing was intended wholly to eliminate any trace of the past proceeding."  *Id.* at 381.  In light of "the intent of the legislature wholly to erase [the defendant's] prior conviction," the Second Circuit held that the conviction should be considered expunged and should not be counted towards criminal history.  The *Beaulieau* approach has been affirmed in subsequent Second Circuit decisions, the circuit looking to "the language and design of the state statute, as well as its purpose." *United States v. Matthews*, 205 F.3d 544, 546 (2d Cir. 2000); *see also United States v. Reyes*, 13 F.3d 638 (2d Cir. 1994).

The Ninth Circuit has adopted a broader view, writing in

*United States v. Hidalgo*, 932 F.2d 805, 807 (9th Cir. 1991) (citing Cal. Welf. & Inst. Code § 1772(a)): "[I]t appears elementary to us that when the verdict of guilty was vacated and set aside and the information dismissed as to [the defendant's conviction], that conviction no longer exists.  Therefore, there is nothing to count for purposes of calculating defendant's criminal history."  The court described the language of Note 10 to USSG § 4A1.2 as "unnecessarily confus[ing]", but argued nonetheless that "the final sentence [of Note 10] supports the conclusion we reach here."  *Hidalgo*, 932 F.2d at 807.  In subsequent cases, the Ninth Circuit has looked to the scope of relief provided by the state statute in determining whether the conviction was "expunged" and thus should not be counted.  *See United States v. Hayden*, 255 F.3d 768 (9th Cir. 2001).

In *United States v. Dobovsky*, 279 F.3d 5 (1st Cir. 2002), the First Circuit reached the specific issue of whether a Massachusetts CWOF that had been subsequently dismissed and sealed should be considered an expunged conviction under § 4A1.2(j).  Dobovsky argued based on *Beaulieau* that the CWOF was not countable, relying on a specific Massachusetts statute stating that a sealed conviction "shall not be deemed a conviction for [any] purpose."  *Id.* at 8-9 (quoting Mass. Gen. Laws ch. 94C, § 34).

The First Circuit, however, rejected the approaches adopted

by the Second and Ninth Circuits, adopting instead the approach used by the Fifth, Tenth and D.C. Circuits.  In particular, it held that "[t]he intent of the state legislature is [only] relevant to show whether the sealing procedure is related to innocence or legal errors."  *Id.*  The First Circuit found that the sealing in this case was not attributable to innocence or errors of law, but rather was intended to give the defendant "a fresh start."  *Id.* at 10.  Consequently, the court held that the CWOF was properly counted towards defendant's criminal history.

The First Circuit's conclusion in this case is at least arguably contrary to the *Beaulieau* analysis adopted by the Second Circuit.  However, the Second Circuit has not been confronted with a case involving the Massachusetts CWOF procedure.

   *3. Whether the Charging Language is Sufficient to Establish a "Crime of Violence" Under the Guidelines*

The third issue again arises out of the complexities of the underlying state law provisions.  To trigger the career offender provisions in the Guidelines, the underlying offense must be either a "controlled substance" offense or a "crime of violence."  At issue is whether Colon's 1996 assault and battery offense qualifies as a "crime of violence."  USSG § 4B1.2(a) defines "crime of violence" to include any felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another."  The difficulty lies in the

fact that Massachusetts groups together two distinct types of conduct, "offensive touching" and "harmful touching," within its assault and battery statute. *Burke*, 457 N.E.2d at 624.  A "harmful touching" necessarily implicates the use of physical force.  An "offensive touching" often does not, instead requiring a showing of lack of consent.  *Id.* at 624-25.  Thus the mere fact that assault and battery was charged does not allow the Court to determine if the offense was a crime of violence.

In cases such as this, where "the statute reaches both conduct that satisfies these definitions and conduct that does not, then the charging instrument and jury instructions may be consulted to determine whether the prior conviction was imposed for conduct that qualifies for enhancement purposes." *United States v. Palmer*, 68 F.3d 52, 55-56 (2d Cir. 1995); *see also Shepard v. United States*, 544 U.S. 13, 16 (2005).  The government has offered a copy of the original charging instrument.  (Doc. 45.)  However, as noted above, the complaint includes only the standard charging language, that the accused "did assault and beat" the victim, language that is used regardless of whether the underlying conduct involved a "harmful touching" or an "offensive touching."  *See* Mass. Gen. Laws ch. 277 § 79 (specifying "did assault and beat" as the proper form of indictment for all assault and battery offenses); *see also United States v. Harris*, 964 F.2d 1234, 1237 (1st Cir. 1992).

In deciding whether this boilerplate language is sufficient to establish that the offense qualifies as a crime of violence, the circuits have again parted ways. The Seventh Circuit confronted the issue in relation to this very same Massachusetts statute in *United States v. Jones*, 235 F.3d 342 (7th Cir. 2000). The court noted that the government in that case had admitted that inclusion of this language in the complaint was mere boilerplate. *Id.* at 347. "As a result," the Seventh Circuit concluded, "no inference regarding whether [the defendant] committed a crime of violence can be drawn from the charging document's use of the phrase 'did assault and beat.'" *Id.* The First Circuit, in marked contrast, has found this exact phrase to provide a sufficient basis for treating the offense as a crime of violence and thus imposing the career offender enhancement. *See United States v. Santos*, 363 F.3d 19 (1st Cir. 2004); *United States v. Estevez*, 419 F.3d 77 (1st Cir. 2005). Once again, this issue has not been addressed by the Second Circuit.

*B. Over-representation of Criminal History*

The lengthy discussion above undoubtedly conveys the many, difficult legal questions posed by this case. The Court does not reach these questions in this case. Rather than dive into these deep and murky waters, I believe it is wiser to address the more fundamental question of what sentence is appropriate based on Colon's actual criminal history. The most direct way to address

14

this question, indeed the method sanctioned by the Guidelines, is to determine if Colon's criminal history category, including the 1996 CWOF, "substantially over-represents the seriousness of [his] criminal history or the likelihood that [he] will commit other crimes." USSG § 4A1.3(b).

In evaluating Colon's criminal history and his likelihood of recidivism, the Court begins by noting the anomalous factual circumstances of his case. Career offender status is generally reserved for those who have committed at least two felony offenses that are either controlled substance offenses or crimes of violence. In this case, three facts bear remark. First, although Colon's two prior offenses are considered felonies for purposes of the Guidelines, he has in fact never before been charged with a felony. Both of the predicate offenses were classified as misdemeanors under Massachusetts law, which provides, at minimum, some indication as to the seriousness of the underlying conduct. Second, with regard to the 1996 offense, the trial court found that a CWOF was appropriate. Although this disposition may, as the government argues, reflect leniency on the part of that court, it is also undoubtedly a reflection in part of the gravity of the conduct at issue. Third, the first predicate offense in this case occurred when Colon was twenty years old; the second when he was twenty-two. Since his conviction in 1998, Colon has not been charged with any crimes of

violence.

Furthermore, the Court is aware of the potentially large disparity between past and present sentences.  Colon has never been sentenced to a term in the Massachusetts state prison system; he has only served short sentences (between three and six months) in the House of Corrections.  But if the career offender enhancement were imposed, the minimum Guidelines sentence would be 188 months.  This would represent more than a ten-fold increase over and above the total cumulative time Colon has previously served in his life.  The sentence would be approximately fourteen years longer than all of Colon's previous sentences combined, including probation violations.

The relationship between the current sentence and prior sentences is an important factor in the over-representation inquiry.  This factor has been thoughtfully elaborated by the Second Circuit in *United States v. Mishoe*, 241 F.3d 214, 220 (2d Cir. 2001):  "[A] major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve.  That reason requires an appropriate relationship between the sentence for the current offense and the sentences, particularly the times served, for the prior offenses...  In some circumstances, a large disparity in that relationship might indicate that the career offender sentence provides a deterrent

effect so in excess of what is required in light of the prior sentences and especially the time served on those sentences as to constitute a mitigating circumstance present 'to a degree' not adequately considered by the Commission." The career offender designation in Colon's case would result in an unjustifiable and unnecessary lopsidedness between prior sentences and the present sentence.

In light of the nature of the prior offenses, the sentences served, and the large disparity between prior sentences and the present sentence, the Court finds that a downward departure is appropriate. *See id.* at 219 (listing relevant factors). The Court finds that the application of the career offender designation in this individual case would ratchet up both Colon's criminal history category and his offense level to a degree that substantially over-represents the seriousness of his criminal history as well as his likelihood of recidivism.

In cases such as this where the career offender provision effects an over-representation of the defendant's criminal history, both vertical and horizontal departures are authorized. *United States v. Rivers*, 50 F.3d 1126, 1130-31 (2d Cir. 1995). However, the Guidelines limit the extent of horizontal departures, only allowing courts to reduce the criminal history category by one level. USSG § 4A1.3(b)(3)(A). As such, the Court hereby departs vertically to offense level twenty-five, the

17

level mandated by the Guidelines absent the application of the career offender provision.  The Court also departs horizontally by one level to criminal history category V.  Although Colon's criminal history was only calculated at category IV prior to the career offender designation, the Court feels that category V most adequately represents Colon's actual criminal history.

### III.  Conclusion

For the foregoing reasons, the Defendant's motion for a downward departure pursuant to USSG § 4A1.3(b) is GRANTED and a sentence of 64 months is imposed.

Dated at Burlington, Vermont this 29th day of November, 2007.

/s/ William K. Sessions III
William K. Sessions III
Chief Judge, U.S. District Court